1  David A. Katz, SBN 112874
2  433 N. Camden Drive, Suite 600
   Beverly Hills, CA 90210
3  (310) 279-5111/FAX (310) 279-5112
   Attorney for Defendant Kyn Naope
4  katznassoc@aol.com

5
                    UNITED STATES DISTRICT COURT
6               FOR THE EASTERN DISTRICT OF CALIFORNIA

7  UNITED STATES OF AMERICA,        )   No. CR 15-133-GEB
8                                   )
              Plaintiff,            )   REQUEST FOR AN ORDER FOR A
9                                   )   LIMITED STAY OF SURRENDER
       v.                           )   UNTIL FEBRUARY 28, 2018;
10                                  )   MEMORANDUM; DECLARATION
11 KYN NAOPE,                       )
                                    )
12            Defendant.            )

13
          TO THE HONORABLE GARLAND E. BURRELL, JR., U.S. DISTRICT JUDGE OF
14
   THE EASTERN DISTRICT OF CALIFORNIA AND TO THE U.S. ATTORNEY FOR THIS
15
   DISTRICT: PLEASE TAKE NOTICE that Defendant Kyn Naope, through counsel, requests an
16
   order for a limited extension of the stay of surrender until February 28, 2018.   At the end of his
17
   sentencing hearing, his surrender date was set for January 5, 2018.   This is the first and only
18
   request to extend the date for surrender, necessitated for the reasons stated herein.   When asked
19
   for its position on this request on December 12, the government stated that it opposed the
20
   request.   This request is based on the following memorandum and declaration, and the entire
21
   file and record in this case.
22 Dated:   December 18, 2017                   Respectfully submitted,
23
                                               /s/ David A. Katz_____
24                                             David A. Katz
                                               Counsel for Kyn Naope
25
26
27
28
                                               1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Factual and Procedural Background

Kyn Naope pleaded guilty to a one-count information charging him with conspiracy to commit mail fraud (18 U.S.C. §371) as part of a scheme to receive unemployment checks to which he was not entitled.   Although the PSR recommended a sentence of five years of probation, the Court imposed five years of custody.

As the Court is aware, Naope's wife's death in late 2015 left him a single parent of his two minor children, now aged 2 ½ and 10.   Despite his efforts, which almost resulted in a solution a month ago, at present there remains no viable alternative for a suitable placement. Naope now requests a limited extension of his surrender date so he can find a caretaker for his children and establish his 10-year-old in therapy.[1]

After the sentencing hearing, Naope retained undersigned counsel, David A. Katz.   The available record and discovery has led Katz to believe there is a strong basis for an appeal and for a 28 U.S.C. §2255 petition, due to ineffective assistance of counsel, George Mgdesyan, in his preparation for and his presentation at the sentencing hearing.   Mgdesyan's ineffectiveness includes his failure to obtain relevant discovery and to investigate and address prejudicial factual and legal errors in the PSR and in the government's sentencing memorandum and argument.   Katz Decl. ¶4.[2]

---

[1]  Upon imprisonment, his business would likely close and there would be no income to support his children.   See PSR at 17.   During the time requested for a limited extension of the stay of surrender, Naope is making plans to try to set aside funds to support his children.

[2]  The defense is already aware of some factual errors in the PSR and in the government's sentencing presentation that may have contributed to the sentencing miscues.   Katz Decl. ¶5. For instance, the government claimed that Naope "was the organizer and leader under the guidelines,"  RT 9/29/17 at 7, even though the record makes quite clear that Mitchell was *the* leader and organizer of the conspiracy.   Nonetheless, Mgdesyan did not object to or even address the government's misstatement.

Moreover, the PSR states that agents identified Donye Mitchell, Sr. "as the person who taught Naope how to carry out the scheme and who was also involved in the same type of scheme for his own benefit."   PSR at 5.   But Mitchell was not running a *separate* conspiracy; he was the kingpin of *the scheme*, with Naope playing a subsidiary role.   Naope gave some names and information to Mitchell, who tried to arrange for those individuals to receive unemployment insurance benefits (most of those individuals received no benefits).   Additionally, Mitchell and

**II.     The Defense Needs To Write The Opening Brief on Appeal In January and Also Needs Time To Prepare A §2255 Motion, And Naope Can Assist Counsel In Both Efforts If He Is Granted A Limited Extension Of The Stay Of Surrender Until February 28, 2018.**

Although the plea agreement includes a waiver of appeal and collateral attack, the waiver permits Naope to raise "non-waivable claims."   Plea Agreement at 8.   Mgdesyan's post-plea ineffectiveness in preparation for and presentation at sentencing is a non-waivable claim. Naope had a non-waivable Constitutional right to have, at all stages, effective assistance, and this is a proper basis both for an appeal and for a §2255 motion.   See *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994) ("Nor do we think such a defendant can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations."); *see also United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (finding that a waiver of appeal did not block defendant's §2255 claim of ineffective assistance alleging "mishandling of the sentencing proceedings").   Naope could not have known, or even predicted, when he signed the plea agreement, that Mgdesyan would be ineffective months later at the sentencing hearing.

Naope's new counsel has acted diligently to collect the information and documents to support Naope's claim for re-sentencing.   After entering this case, Katz promptly filed a notice of appeal, C.A. 17-10444 (the date currently set for the opening brief is January 10, 2018, but counsel expects to seek one 30-day extension of time until February 9).   Also, soon after entering this case, Katz promptly contacted Naope's sentencing lawyer to obtain his file, which included the PSR and a flash drive with over 8,000 pages of discovery (but no index to the files). Katz Decl. ¶6.   The file showed that Mgdesyan did not challenge *any* aspect of the PSR,

---

his gang took a portion of the $40,000 or so in unemployment benefits that Naope nominally received.

Mitchell managed Naope as one of the many things that Mitchell did as part of the conspiracy. Mgdesyan, however, did not challenge or address any aspect of the PSR, including its exaggerated depiction of Naope's role.

including the Sentencing Guidelines calculations, which supposedly produced a Guidelines range of 63-78 months.   Mgdesyan's sentencing memorandum, which requested straight probation, relied solely on the fact that Naope's wife had died, leaving Naope responsible for his two minor children.   In other words, Mgdesyan's position was that the Court should grant a five-year downward departure based solely on Naope's personal circumstances.

On November 13, Katz asked the government for an index, even a rough index, for the files on the flash drive and also for the case report.   The government never responded to those requests.   Katz Decl. ¶7.   Katz also ordered and obtained from the court reporters the transcripts of the change-of-plea and sentencing hearings.   Katz filed motions with this Court and also with Judge Nunley in *Parks, et al.* for access to sealed records in the related cases. This Court denied that request in the *Mitchell* case, but Katz expects to seek reconsideration before December 26.   Katz Decl. ¶8.   The government's response would be due a week later. On December 11, Judge Nunley ordered the government to file its response in the *Parks* case by December 18, so Naope's reply in that case would be due by December 26.   If this Court were to extend the surrender date, the parties could ask to amend the briefing schedule so as not to overlap with the holidays.   Katz Decl. ¶9.

Research supports the conclusion that, due to the ineffectiveness of attorney Mgdesyan and other sentencing errors, Naope has a right to be resentenced.   These reasons include, but are not limited to, factual and legal errors that led to an overstated loss amount, an overstated role, an erroneous enhancement for sophisticated means, and an overstated criminal history. Katz Decl. ¶10.

- Naope seems to have made less than $50,000 in this case. The loss amount the PSR attributed to him – over $1.5 million – was not caused by Naope or acts in which he knowingly participated.   Nor could Naope have reasonably foreseen that amount of loss from Mitchell's conspiracy.

- The +4 role adjustment in the PSR was inconsistent with the discovery provided to Mgdesyan and with the law, and it exceeded the adjustments to the defendants in the related *Park et al*. case.   Additionally, a +4 role adjustment (or even a +2) cannot be added unless it is determined that the persons "controlled by Naope" were each

themselves criminally culpable, but the PSR and the government never asked the Court to make such a determination and the Court did not do so.   The government's misstatement at sentencing that Naope was the leader and organizer, when in fact Mitchell was, further contributed to the excessive role adjustment.

- ▪ Although a sophisticated means enhancement, recommended by the PSR, might apply to Mitchell, it should not have been applied to Naope.   Although Mitchell used Naope's inactive company, Sona Entertainment, for his scheme, Mitchell did so to conceal his own involvement.   Nothing suggests that Naope used or was aware of Mitchell's sophisticated means.

- ▪ Assigning Naope Criminal History Category II overstated his criminal history.   Although Mgdesyan ignored this issue, Naope should have been treated as Category I.

In sum, the low end of Naope's correct Guidelines range, before weigh his family tragedy and child-care predicament, was 12 months, not 63 months. To compound matters, Mgdesyan focused on straight probation instead of pressing for 12 months *home detention* and explaining why, in the alternative, any sentence should have been substantially lower than five years.

A limited extension of the surrender date would give Katz the time to obtain and review items in the *Mitchell* and *Parks* cases before filing the opening brief on appeal and the §2255 motion.   It also would permit Naope to assist in the preparation of the opening brief on appeal and the §2255 motion, which would be difficult if he were in custody.   If the Court granted the request for an extension of the surrender date, the hearing on the §2255 motion could be set for Friday February 23.   A schedule could be set requiring Naope to file his §2255 petition by January 31, the government to file its response by February 9, and Naope to file his reply by February 16.   Katz Decl. ¶11.

**III.   A Limited Extension Of The Surrender Date Would Pose Neither A Risk Of Danger To The Public Nor A Risk Of Flight.**

A limited extension of the surrender date presents no risks to public safety and no flight risk.   Naope was released on bond almost 2 ½ years ago, on July 31, 2015, and he has remained out of custody without incident since then.   At the sentencing hearing, this Court found that he would not flee and that he posed no danger to anyone or the community, and for those reasons permitted him to remain in the community until January 5.   There has been no change of

circumstances that would alter these findings.   Katz Decl. ¶13.

## IV.  A Limited Extension Of The Surrender Date Would Give Naope Necessary Time To Try To Find A Caretaker For His Children And Establish His Son In Therapy.

As the Court is aware, in late 2015, Naope's healthy wife died during routine cosmetic surgery.   That left Naope the sole caretaker of two young boys, one of whom was an infant. As Probation determined, there are no suitable family members to care for his children.   PSR at 17.[3]   Sending Naope into custody without finding a suitable placement for the children would have a devastating impact on their psychological development.

Following his mother's death, the 10-year-old had serious anger issues.   They abated somewhat in 2017, but have recurred under the current ordeal his father is facing.   Naope has recently come to the recognition that the 10-year-old needs therapy, and he has been trying to find the right therapist.   A stay of the surrender date would give Naope's son time to become comfortable with a therapist.   Katz Decl. ¶14.

Since the day he was sentenced, and bearing in mind that there are no suitable family members to care for his children, Naope has devoted himself to looking for a non-family solution for his child-care predicament.   The most promising possibility was his deceased wife's former roommate, one of her closest friends, and her husband.   They expressed a desire to find a way to take in his children.   On reflection, however, in mid-November they said they could not do so, primarily because their own son has autism.   Katz Decl. ¶15.

Since then, Naope has been looking into whether boarding school would be psychologically viable for his 10-year-old and economically viable for Naope.   If the boarding school option can be worked out, Naope will ask his deceased wife's former roommate and her husband, or a family friend, if they could take in the 2 ½ year old.   Katz Decl. ¶16.

Naope is hoping to find a suitable caretaker so his children do not end up in the foster care system, but so far to no avail.   The grant of a limited stay of the surrender date would give

---

[3]   After the PSR was written, family members have proven even less suitable to care for Naope's children.   Naope's brother, from whom he is estranged, was recently arrested in a drug case. That brother was living with Naope's stepmother and apparently was using the home for the drug crime.   For these reasons, neither Naope's brother nor his stepmother is a suitable caretaker for the two young boys, even if they claimed they could shoulder that responsibility. Katz Decl. ¶13.

1  him time to try to find someone suitable to take care of them.   It may well make an enormous

2  difference in the lives of his two innocent minor children.   Katz Decl. ¶17.

3  **Conclusion.**

4       For the foregoing reasons, the defendant Kyn Naope respectfully requests that the Court

5  extend his stay of surrender until February 28, 2018.

6  Dated:   December 18, 2017          Respectfully submitted,

7            /s/ David A. Katz_____

8            David A. Katz
             Counsel for Kyn Naope

### DECLARATION OF DAVID A. KATZ

I, David A. Katz, declare as follows:

1.     The facts set forth below are personally known to me, and I have first-hand knowledge of them.   If called upon to do so, I could and would testify competently to those facts under oath.

2.     I am an attorney licensed to practice law in the State of California and a member of the State Bar of California and the Bar of this Court.

3.     I am counsel for Kyn Naope in this case, and in his appeal C.A. 17-10444.

4.     After the sentencing hearing, Naope retained me.   The available record and discovery has led me to believe there is a strong motion for re-sentencing to be made under 28 U.S.C. §2255 due to ineffective assistance of counsel, George Mgdesyan, in his preparation for and his presentation at the sentencing hearing, as well as there being an appeal on that basis. Mgdesyan's ineffectiveness includes his failure to obtain relevant discovery and to investigate and address prejudicial factual and legal errors in the PSR and in the government's sentencing memorandum and argument.

5.     I am aware of factual errors in the PSR and in the government's sentencing presentation that may have contributed to the sentencing miscues.

6.     After entering this case, I promptly filed a notice of appeal, C.A. 17-10444 (the date currently set for the opening brief is January 10, 2018, but I expect to seek one 30-day extension of time until February 9).   Also, soon after entering the case, I contacted Naope's sentencing lawyer to obtain his file, which included the PSR and a flash drive with over 8,000 pages of discovery (but no index to the files).

7.     On November 13, I asked the government for an index, even a rough index, for the files on the flash drive and also for the case report.   The government never responded to those requests.

8.     I also ordered and obtained from the court reporters the transcripts of the change-of-plea and sentencing hearings.   I filed motions with this Court and also with Judge Nunley in *Parks, et al.* for access to sealed records in the related cases.   This Court denied that request in the *Mitchell* case, but I expect to seek reconsideration before December 26.   The

government's response, if any, should be due a week after my filing.

9.    On December 11, Judge Nunley ordered the government to file its response in the *Parks* case by December 18, so Naope's reply in that case should be due by December 26.   If this Court were to extend the surrender date, the parties could ask to amend the briefing schedule so as not to overlap with the holidays.

10.    I believe my research to date supports the conclusion that, due to the ineffectiveness of attorney Mgdesyan and other sentencing errors, Naope has a right to be resentenced.   These reasons include, but are not limited to, factual and legal errors that led to an overstated loss amount, an overstated role, an erroneous enhancement for sophisticated means, and an overstated criminal history.

11.    A limited extension of the surrender date should give me time to obtain and review items in the *Mitchell* and *Parks* cases before filing the opening brief on appeal and a §2255 motion.   It also would permit Naope to assist in the preparation of the opening brief and the §2255 motion, which would be difficult if he were in custody.   If the Court granted the request for an extension of the surrender date, the hearing on the §2255 motion could be set for Friday February 23.   A schedule could be set requiring Naope to file his §2255 by January 31, the government to file its response by February 9, and Naope to file his reply by February 16.

12.    I believe a limited extension of the surrender date presents no risks to public safety and no flight risk.   Naope was released on bond almost 2 ½ years ago, on July 31, 2015, and he has remained out of custody without incident since then.   At the sentencing hearing, this Court found that he would not flee and that he posed no danger to anyone or the community, and for those reasons permitted him to remain in the community until January 5.   I believe there has been no change of circumstances that would alter these findings.

13.    After the PSR was written, family members have proven even less suitable to care for Naope's children.   I understand that Naope's brother, from whom Naope is estranged, was recently arrested in a drug case.   That brother was living with Naope's stepmother and apparently was using the home for the drug crime.   For these reasons, neither Naope's brother nor his stepmother is a suitable caretaker for the two young boys, even if they claimed they could shoulder that responsibility.

14.     I understand that following his mother's death, the 10-year-old had serious anger issues, they abated somewhat in 2017, but have recurred under the current ordeal his father is facing.   Naope has recently come to the recognition that the 10-year-old needs therapy, and he has been trying to find the right therapist.   A stay of the surrender date would give Naope's son time to become comfortable with a therapist.

15.     I understand that since the day he was sentenced, and bearing in mind the PSR found there are no suitable family members to care for his children, Naope has devoted himself to looking for a non-family solution for his child-care predicament.   The most promising possibility was his deceased wife's former roommate, one of her closest friends, and her husband.   They expressed a desire to find a way to take in his children.   On reflection, however, on or about November 8, they said they could not do so, primarily because their own son has autism.

16.     Naope has been looking into whether boarding school would be psychologically viable for his 10-year-old and economically viable for Naope.   If the boarding school option can be worked out, Naope will ask his deceased wife's former roommate and her husband, or a family friend, if they could take in the 2 ½ year old.

17.     I believe the grant of this limited extension of time may well make an enormous difference in the lives of his two innocent minor children.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   December 18, 2017                    Respectfully submitted,

                                         /s/ David A. Katz_____
                                         David A. Katz
                                         Counsel for Kyn Naope

**PROOF OF SERVICE**

I, David A. Katz, am employed in the county of Los Angeles, State of California.   I am over the age of 18 years and not a party to the within action.   My business address is 433 North Camden Drive, Suite 600, Beverly Hills, CA 90210

On the date below, I served the foregoing document described as:

REQUEST FOR AN ORDER FOR A LIMITED STAY OF SURRENDER UNTIL FEBRUARY 28, 2018; MEMORANDUM; DECLARATION

on the interested parties in this action by means of the ECF, as follows:

AUSAs Jared Dolan and Matthew Yelovich
U.S. Attorney's Office
501 I Street, Suite 10-100
Sacramento, CA 95814

[X]   (BY PERSONAL SERVICE)   I caused such envelope to be delivered by the ECF to the addressee.

[X]   (Federal)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Dated:   December 18, 2017                        Respectfully submitted,

                                                              /s/ David A. Katz_____
                                                              David A. Katz
                                                              Counsel for Kyn Naope